# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | | |
|---|---|---|
| LONNIE KRETZSCHMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:11-6108-DGK-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Lonnie Kretzschmer seeks judicial review of the Commissioner of Social Security's denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.* Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

Plaintiff contends he is disabled because of learning disabilities, anxiety, and impulse control problems. The Administrative Law Judge ("ALJ") denied Plaintiff's application, finding that while Plaintiff suffered from a severe impairment of borderline intellectual functioning, he retained the residual functional capacity ("RFC") to work at all exertional levels but was limited to simple, repetitive, and routine job duties with skills that could be learned by demonstrating, not be reading or writing.

After carefully reviewing the administrative record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

## Procedural and Factual Background

Plaintiff filed his application for disability insurance benefits on April 24, 2009 alleging a disability onset date of February 10, 2009. The Commissioner initially denied his application on June 30, 2009. Plaintiff then requested a hearing before an ALJ, which was held March 31, 2011. The ALJ issued his decision denying Plaintiff's application on June 23, 2011. The Appeals Council denied Plaintiff's request for review on September 14, 2011, leaving the ALJ's decision as the Commissioner's final decision.

A summary of the medical record is presented in the parties' briefs and is repeated only to the extent necessary.

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with

the Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than 12 months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

Plaintiff contends the ALJ erred by: (1) finding that his impulse control disorder was a non-severe impairment; and (2) finding that the Plaintiff's impairments did not meet or equal listing 12.05(C).

## A. The ALJ did not err in determining Plaintiff's impulse control disorder was not a severe impairment.

At step two of the evaluation process, the ALJ found that Plaintiff had a severe impairment of borderline intellectual functioning and there was insufficient medical evidence in the record to find that his impulse control disorder was a severe impairment. R. at 15-17. In finding his impulse control disorder was non-severe, the ALJ noted Plaintiff did not take any medication for it, had not sought counseling for it, and, with the exception of the one incident, he had no problems getting along with coworkers. R. at 17.

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

Plaintiff argues the ALJ erred because the record shows he has been diagnosed with this impairment on more than one occasion. R. at 224, 259. He argues the ALJ failed to fully analyze the severity of this impairment, and so this case should be remanded for further discussion. Pl.'s Br. at 7.

A severe impairment is an impairment that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe when it has no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521; Social Security Ruling (SSR) 96-3p. The claimant bears the burden of establishing that his impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Although severity is not an onerous requirement to meet, it is also not a toothless standard. *Id.* at 70.

The record here supports the ALJ's finding that Plaintiff's impulse control disorder is not a severe impairment. The fact that two consultative examiners diagnosed Plaintiff with impulse control disorder, R. at 222, and that Plaintiff confronted a coworker is not dispositive. The fact that a claimant is diagnosed with an impairment does not mean the impairment is severe. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011). Plaintiff told the examiners that although he occasionally had problems with his temper, it took "a lot" to make him angry and he was normally in a happy mood. R. at 222, 257. Plaintiff also testified this was an isolated event and that he had never had problems getting along with his coworkers. R. at 38, 41. The fact that Plaintiff had a confrontation with one coworker in 13 years of employment does not demonstrate he has a severe impairment. Finally, the absence of evidence of counseling or psychiatric treatment weighs against a finding of disability. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). Plaintiff has never sought mental health treatment or taken any medication for this or any

other mental impairment. R. 39-40, 223, 257. Given the record, the ALJ did not err in finding that Plaintiff's impulse control disorder was a non-severe impairment.

**B.     The ALJ did not err in finding that the Plaintiff's impairments did not meet or equal listing 12.05(C).**

Plaintiff next argues that the ALJ erred at step three by finding that his impairments did not meet or equal listing 12.05(C) for mental retardation. In relevant part, listing 12.05 states:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning *with deficits in adaptive functioning* initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \* \* \*
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05 (emphasis added). To meet a 12.05 listing, the claimant must show that his impairment meets the requirements set out in the introductory paragraph and any one of four sets of additional criteria, paragraphs A through D. *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). Listing 12.05(C) requires a claimant to show (1) the onset of a mental or intellectual impairment before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Maresh*, 438 F.3d at 899. The claimant bears the burden of establishing that his impairment meets or equals the listing, and he must show that his impairment meets all the specified criteria. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

The severity standards for listed impairments are high because the "listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Accordingly, an individual who meets a listing is considered to have an impairment severe enough to preclude "*any* gainful activity, not just substantial gainful activity." *Id.* (emphasis in original).

Plaintiff contends he meets the 12.05(C) listing. The ALJ found he did not because he did not suffer the requisite deficit in adaptive functioning. R. at 17. This determination is supported by substantial evidence on the record.

This finding is supported by Dr. Nora Clark's, Ph.D., consultative psychological evaluation and the Court of Appeals decision in *Cox v. Astrue*, 495 F.3d 614 (8th Cir. 2007). In *Cox*, the Eighth Circuit held that a consultative evaluation showing IQ scores in the 60s and a diagnosis of mild mental retardation did not support a finding of disability under listing 12.05(C) because the evaluation's analysis was more consistent with borderline intellectual functioning. *Id.* at 616, 618-19. Similarly, in the present case although Dr. Clark found Plaintiff had a valid verbal IQ of 63, her diagnosis of borderline intellectual functioning supports the ALJ's determination that Plaintiff is not disabled under listing 12.05(C). R. at 259.

The crux of the inquiry here is whether Plaintiff possesses significant deficits in adaptive functioning. As the Diagnostic and Statistical Manual of Mental Disorders notes, "[i]mpairments in adaptive functioning, rather than a low IQ, are usually the presenting symptoms in individuals with mental retardation." American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 40 (4th ed. 1994) (DSM-IV). "[M]ental retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning." *Id*. at 39-40. Thus, two individuals with the same IQ scores may have

6

different diagnoses, depending on their degree of adaptive functioning. The Court notes that both Dr. Clark and Dr. Margaret Sullivan, Ph.D., opined that Plaintiff would have no difficulty understanding, remembering, or carrying out simple instructions, R. at 225-26, 260. These facts weigh against finding Plaintiff has the necessary deficits in adoptive functioning.

Finally, the Court is not persuaded by Plaintiff's assertion that he has met his burden of showing he suffers from adaptive functioning deficits because he lives with his father, cannot read or write, needs help in paying bills and writing checks, has worked only a few jobs in his life, and, when he goes somewhere, is usually accompanied by someone else. Although Plaintiff testified that he lived with his father, he did not testify that he lived with his father because he needed his father's assistance. Rather, the record shows Plaintiff began living with his father after Plaintiff separated from his wife. R. at 223. In fact, Plaintiff reported that he cares for his family members by babysitting and helping his son and daughter-in-law run errands. R. at 40, 159-60. He also drives, shops, and performs household chores. R. at 40, 42, 161-62. That he has worked only a few jobs in his life is not significant, because the record shows he has worked consistently for more than 15 years. R. at 143, 147, 154, 180, 216. Thus, Plaintiff's activities and work record are not inconsistent with the ALJ's holding.

Since Plaintiff did not meet his burden of showing he met the criteria for listing 12.05(C), the ALJ did not err at step three in holding Plaintiff is not disabled.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  March 5, 2013                       /s/ Greg Kays
                  GREG KAYS, JUDGE
                  UNITED STATES DISTRICT COURT